## GREENE et al. v. BEIDLER et al.
### No. 380.

Circuit Court of Appeals, Second Circuit.

May 2, 1932.

Charles J. Williamson and Frank S. Appleman, both of Washington, D. C. (Charles G. Hensley, of New York City, of counsel), for appellants.

Edward H. Cumpston, of Rochester, N. Y., for appellees.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

This appeal seeks review of a decree of the court below determining the issue of priority of invention between the appellants and appellees as interfering applicants, claiming the same invention. The appellee Greene filed his application on August 20, 1924, and appellant Beidler on April 4, 1924. Priority of invention was awarded Beidler by the Patent Office and this was sustained by a decision

of the Board of Appeals of the Patent Office, dated June 5, 1928. A counterclaim was interposed in this suit alleging infringement by the appellees, but on motion of the appellee Photostat Corporation, it was dismissed. The court below sustained the claim of the appellees upholding Greene as the first inventor.

The subject-matter concerns "a camera having an exposing chamber and light admitting means, a film holder rotatably mounted in the camera and operative to present two sides of film to the light successively, film drawing means and film severing means associated and movable with the film holder, and operative means stationed in locations with relation to which the film holder is movable for imparting motion to the film drawing means and film severing means when the said film holder is in a predetermined position." This invention is used for making photostatic copies of documents for records upon film or sensitive sheets supplied to the camera from a roll of paper with a sensitive coating on both sides so that a photoprint may be made on each side of the sheet. It is called a duplex machine. It has (a) a film drawing means, such as paper feed rollers; (b) a film severing means, such as knives; (c) the film drawing means and film severing means movable with the film holder, mounted on and turning with the rotatable holder; and (d) operative means stationed in locations with relation to which the film holder is movable for imparting motion to the film drawing means and film severing means when the film holder is in a predetermined position, such as crank devices on the exterior of the stationary casing of the machine.

The record shows appellant's conception and disclosure antedated the conception and disclosure of the appellee. Appellee claims actual reduction to practice of his invention on March 22, 1924. Appellant's machine was completely and successfully used on March 24, 1924, as found by the Court of Customs and Patents Appeals. Beidler v. Caps, 36 F.(2d) 122. The Patent Office gave January 12, 1924, as appellee's date of conception, but this was nine months after appellant Beidler's reduction to practice in the spring of 1923. The Patent Office found that appellant Beidler had a demonstrating body made in March or April, 1923. The court below found "that record discloses that Beidler established a conception of the subject-matter of the count in issue as early as the Spring of 1923 when an experimental model of the camera was made." This was a reduction to practice as well as conception. Curtiss Aeroplane v. Janin, 278 F. 454 (C. C. A. 2). In appellant Beidler's demonstrating body of 1923 were full-sized, practical parts. They were shown to be capable of practical use and, in fact, were used in a later machine that was operated. The thing to be demonstrated was not whether photographs could be taken on the opposite sides of doubly sensitized paper; that was known to be possible. The invention did not consist in the lens or means to reproduce the image on the sensitive paper; that was old in the art. But the thing to be demonstrated, and which was actually demonstrated, was the mounting on the turntable of the paper feeding rolls and the paper cutting device. These parts, including the exposing chamber and the paper roll holder, were embodied in, and their practicability made apparent by, the demonstrating body shown in the spring of 1923.

The court below found that there was ample evidence to show that a test was made of a machine of the duplex type on March 22, 1924, by the appellee Greene, and that this was the date of his actual reduction to practice. An examination of the record convinces us that the burden of proof, which rested heavily upon the appellees, to establish Greene's prior conception and reduction to practice has not been sustained. The credible evidence and all the probabilities involved are against the appellees' claims. Three witnesses were called who sought to establish the March 22, 1924, date. Ulrech told of his part in helping on that day to move the machine into a dark room and referred to the prints made, but he gave no evidence as to what was in the machine. Butz could not say whether the feed rolls and severing knives were in the machine. He had no knowledge of these parts. Neither Butz nor Landrock in their testimony, in describing what was done, say anything about any feeding of the paper or cutting off of the paper after the double exposures. It is a significant fact that they failed to say there were present in the machine the feed rolls and the special operating mechanism with the severing knife and its separate operating mechanism. It must be shown, in an interference case, that the apparatus tested included all the elements of the issue in order to establish reduction to practice of the invention. Henderson v. Gilpin, 39 App. D. C. 428. The testimony of Butz and Landrock is very unsatisfactory. Their testimony comes at a very late day, some seven years after March 22, 1924, and their assistance to Greene at that time was too inconsequential to form the basis of

knowledge of the machine. Appellee Greene did not testify. There is a contradiction in the testimony between Greene in the Patent Office proceedings and the testimony of Landrock here as to the spring stop plungers used in the machine. The date claimed for Greene was very suspicious—just two days before appellant Beidler's conceded date of reduction to practice. There seems to have been no particular reason why the test should have been made on Saturday when it might have been made on Monday, March 24th, which was the next working day. No testimony appears to explain why it was important for the Photostat Corporation to ascertain on Saturday afternoon, rather than on the next Monday, what was already known in the photocopying art, namely, whether pictures could be made on opposite sides of double-coated paper. The reason given by Landrock for this is very incredible. Moreover, it appears that the turntable included two castings, one for the turntable itself or the rotating part, and the other for the magazine base, and it is established that the drawings for these two castings were not finished until March 18 and 19, 1924. The dates of these drawings were established by testimony both at this trial and in the Patent Office proceedings. It is unlikely that the time was sufficient to have the castings finished and ready for installation in the machine on March 22, 1924. The testimony of the witness Swan called by the appellants was more reliable. His account is reasonable and entirely credible. He was a highly skilled mechanic and, apparently, of unusual experience and well qualified to give an intelligent and persuasive account of the events and the work of Greene. We are satisfied that the court below improperly accepted March 22, 1924, as the date when the appellee Greene reduced his invention to practice.

 Regardless of the reasons for requiring diligence; an inventor who conceives an invention prior to another, but reduces it to practice after the other, must show that he was at least taking steps by the time of the advent of the latter inventor in making the same invention, either to embody his invention in an actual device which would disclose it to the public, or to file an application for his patent. The appellant Beidler, about the 1st of January, 1924, urged Smith, whom he had engaged, to resume work on the duplex machine in the following phrases: "I wish you would get at the Duplex Machine and finish it" and "go to work on the machine and stay there. Never mind anything else that happens." From that day until March 24, 1924, appellant Beidler's machine was developed from the demonstrating body to the accepted commercial machine of the latter date. This time was spent in reasonable activity, and the length of time is not unusual under the circumstances. Griffin v. Swenson, 15 App. D. C. 135; Dickinson v. Swinehart, 49 App. D. C. 222, 263 F. 474; Courson v. O'Connor, 227 F. 890 (C. C. A. 7).

We think the evidence justifies the claim that the appellant Beidler showed the exercise of due diligence, especially from January 12, 1924, the alleged date of conception and disclosure by Greene. All probabilities point to the truth of the claim of appellants that the Beidler machine had its beginning on the 1st of January, 1924. It is not disputed and the testimony of Smith and Beidler as to it is trustworthy and should be accepted. Uihlein v. Gen. Elec. Co., 47 F.(2d) 997 (C. C. A. 7). The testimony offered to sustain the heavy burden, necessarily assumed by the appellee, does not justify the decree below. Morgan v. Daniels, 153 U. S. 120, 14 S. Ct. 772, 38 L. Ed. 657; Curtiss Aeroplane v. Janin, supra.

 Moreover, the subject-matter was thoroughly exhausted and examined in the interference proceedings in the Patent Office (Greene v. Beidler), wherein the appellant Beidler was declared to be the inventor, the first to have successfully reduced the invention to practice and the first to file his application for a patent. And from the testimony as adduced on this trial, we agree with the Examiner of Interferences who held that Greene's attempt to antedate Beidler's well-established filing date of April 4, 1924, was not sufficiently supported to warrant awarding to Greene a reduction to practice at an earlier date, such as would defeat the appellant Beidler's claim. Indeed, the Court of Customs and Patent Appeals found appellant Beidler to have been diligent from January 1, 1924, until the completion of the machine. Beidler v. Caps, supra. As said in Barrett Co. v. Koppers, 22 F.(2d) 395, 397 (C. C. A. 3): "The law gave the plaintiffs a day in court on the issue of priority. That was the day the interference was heard and if they chose not to avail themselves of their full rights but to gamble on the decision by giving only a part, and the weaker part, of the evidence they had in hand, they did it at their own risk. After losing on such evidence in what otherwise would be a train of futile appeals in the patent tribunals and Court of Appeals of the District of Columbia they cannot come into a District Court and say, now for the first time we shall tell the true story

of reduction to practice and demand a patent."

This is substantially the position which the appellees here have taken. It cannot prevail.

■ The counterclaim interposed alleging infringement is without merit and was properly dismissed. At the time the counterclaim was pleaded, the appellant Beidler's application was still pending in the Patent Office and no patent had been issued on it to support a cause of action for infringement. Kirk v. United States, 163 U. S. 49, 16 S. Ct. 911, 41 L. Ed. 66; Marsh v. Nichols, Shepherd & Co., 128 U. S. 605, 9 S. Ct. 168, 32 L. Ed. 538. Nor is there anything to show that the appellees had used ·or sold, directly or indirectly, any of the machines in question since the issuance of the patent to the appellant Beidler.

Decree reversed.